UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER A. GEIS,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL Acting<br>Commissioner Social Security Administration,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    No. 1:16-cv-01921-SEB-MPB |

# REPORT AND RECOMMENDATION ON
# APPROPRIATE DISPOSITION OF THE ACTION

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 14). Plaintiff Christopher A. Geis seeks judicial review of the Social Security Administration's final decision deeming him ineligible for Disability Insurance Benefits. The matter is briefed with the period for reply passing without a filing from Plaintiff. (Docket No. 15; Docket No. 20). It is recommended that the District Judge **REMAND** the decision of the Commissioner of the Social Security Administration finding that Christopher A. Geis is not disabled, pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

## Introduction

On October 11, 2012, Christopher A. Geis, filed an application for disability and Disability Insurance Benefits under Title II of the Social Security Act. He is alleging disability beginning April 28, 2008. After denials at the initial and reconsideration levels, Mr. Geis filed a request for a hearing before an Administrative Law Judge (ALJ). A video hearing was held on

November 6, 2014, before Administrative Law Judge (ALJ) Joseph L. Brinkley. On February 9, 2015 the ALJ issued a decision denying Mr. Geis benefits. On May 25, 2016, the Appeals Council upheld the ALJ's decision and denied the request for review, thereby making the ALJ's decision the final decision of the Social Security Commissioner. 20 C.F.R. § 404.981; *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). On July 20, 2016, Mr. Geis timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

## **Standard for Proving Disability**

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Plaintiff is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration ("SSA") has implemented these statutory standards by prescribing a five-step sequential evaluation process. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe. If he is not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). The Listings

include medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and his RFC. If so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### **Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. This court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *See, e.g.*, *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ—

not the court—holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). Accordingly, the court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made. The ALJ must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

The ALJ found that Mr. Geis met the insured status requirement of the Social Security Act. He further found that Mr. Geis had not engaged in substantial gainful activity since April 28, 2008, the alleged onset date. (Docket No. 12-2 at ECF p. 17). Therefore, the ALJ proceeded to step two of the analysis.

At step two, the ALJ determined that Mr. Geis, who was thirty-seven years old on the alleged disability onset date, had the following severe impairments: bipolar disorder and alcohol abuse. (Docket No. 12-2 at ECF p. 17); *See* 20 C.F.R. § 404.1520(c).

At step three, the ALJ found that Mr. Geis's combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R § 404, subpart P, Appendix 1, explicitly considering Listings 12.04 and 12.09. (Docket No. 12-2 at ECF pp. 17-19).

4

The ALJ found the severity of claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of Listing 12.04 or 12.09. The ALJ considered the four functional areas set out in the disability regulations, i.e., the "paragraph B" criteria. ([Docket No. 12-2 at ECF pp. 17-19](#)). The ALJ found that Mr. Geis's (1) activities of daily living were no more than mildly limited, noting that he drives his wife and children, cleans the house, and is able to take care of personal hygiene by himself; (2) social functioning was no more than moderate restrictions given that he resides with his wife and three children and has a good relationship with family and has friends, but also that he no longer hangs out with friends; (3) concentration, persistence, or pace was no more than moderately limited, noting that during the Consultative Examination, the doctor reported that the claimant appeared to have difficulty concentrating, but successfully completed serial 7s, repeated 6 digits forward, and three digits backwards, and maintained sufficient attention and concentration at the hearing; and (4) had no episode of decompensation for an extended duration, noting a seven-day hospitalization was not of extended duration and psychiatric admissions occurred prior to his alleged onset date. ([Docket No. 12-2 at ECF pp. 17-19](#)).

Prior to Step four, the ALJ determined that Mr. Geis had the RFC to perform very heavy work except that the claimant:

> [C]an perform simple, routine, repetitive tasks, and understand, remember, and complete simple work instructions; is limited to occasional superficial contact with the general public, but no physical contact with the general public, and he is limited to occasional work in teams and in tandem with others; can tolerate little change in work structure; and is limited to low stress type jobs, meaning no high production quotas and/or fast-paced assembly line work.
>
> ([Docket No. 12-2 at ECF p. 19](#)).

At Step four, the ALJ found that Mr. Geis is not able to perform past relevant work. (Docket No. 12-2 at ECF p. 27). At Step 5, the ALJ classified the claimant as a younger individual age 18-49, with at least a high school education and an ability to communicate in English. (Docket No. 12-2 at ECF p. 27). The ALJ found that there were jobs that exist in significant numbers in the national economy that the claimant can perform. Based on the testimony of the VE and, considering the claimant's age, education, work experience, and RFC, the ALJ concluded that the claimant would also be able to perform the jobs of night cleaner, laundry worker, and groundskeeper. (Docket No. 12-2 at ECF p. 28).

II. **Review of Plaintiff's Assertions of Error**

   A. **The ALJ did not err in his RFC analysis or in his hypotheticals to the vocational examiner in either his treatment of Geis's previous work attempts or in assigning specific limitations to account for moderate limitations in concentration, persistence, and pace.[1]**

Plaintiff argues that the ALJ's Residual Functional Capacity finding was not supported by substantial evidence and that the ALJ made several errors. He asserts that the ALJ drew improper conclusions for his previous, failed work attempts. (Docket No. 15 at ECF p. 13). He also contends that the ALJ provided no explanation for how his limitations in regards to stressors addressed Mr. Geis's particular stressors. (Docket No. 15 at ECF pp. 16-17).

On response, the Commissioner asserts that the ALJ assessed proper limits that adequately accommodated Plaintiff's moderate degree of limitation in concentration, persistence, or pace. (Docket No. 20 at ECF p. 9). She argues that the Seventh Circuit has affirmed ALJ

---

[1] On review, the Court combines Plaintiff's first and third issues, noting the overlap as one argues, in part, that the ALJ's residual functional capacity did not account for all of Plaintiff's limitations and the other argues that the ALJ's hypotheticals to the VE failed for the same reasons. The Court notes that the evidence and case law Plaintiff relies on for both arguments greatly overlap.

decisions that included far fewer limits in the vocational expert's hypothetical question and/or RFC's than are present here. (Docket No. 20 at ECF pp. 10-11). The Commissioner's brief is silent on the issue of the ALJ's treatment of Plaintiff's previous work attempts.

The Seventh Circuit requires the ALJ to include the claimant's limitations in both his residual functional capacity and the hypotheticals to the vocational examiner. *Similia v. Astrue*, 573 F.3d 503, 520-21 (7th Cir. 2009). The cases suggest that the most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include them in the hypothetical. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). However, the Seventh Circuit does not have "a per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases." *Id.* A hypothetical is sufficient "when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.*

SSR 96-8p provides that the "RFC assessment must be based on *all* of the relevant evidence in the case record," including evidence from attempts to work. SSR 96-8p (emphasis in original). The Plaintiff asserts that the ALJ failed to consider his hearing testimony that each job he worked after his alleged onset date only lasted a couple days to six weeks because he could not concentrate on the work and was filled with anxiety. (Document No. 12-2 at ECF p. 44).[2] Here, within his RFC analysis the ALJ recounted that Plaintiff "testified that he last worked in 2014, as a painter for 6 weeks and a landscaper for a couple of days but he had to quit due to his mental impairments." (Document No. 12-2 at ECF p. 20). This accurately reflects the testimony

---

[2] Plaintiff also argues that the ALJ erred in his credibility determination by using his unsuccessful work attempts against him; however, these two arguments call for separate analyses so this will be considered in issue two with the rest of the Plaintiff's arguments as to the ALJ's credibility analysis.

7

that the Plaintiff provided at the hearing, in accordance with SSR 96-8. Notably, Plaintiff does not argue additional limitations or impairments the ALJ did not include within his RFC by failing to consider this evidence; instead, he merely argued the evidence should have been considered. It was. On this point, the Plaintiff has failed to carry his burden. *Brisco ex rel. Taylor v. Barnhart*, 425 F.3d 345 (7th Cir. 2005) (Claimant bears the burden of proof at steps one through four).[3]

Next, Plaintiff asserts that the ALJ's RFC and hypotheticals to the vocational examiner were not meaningful because the ALJ did not first inquire or consider which demands of work or work-like settings were stressful to the individual claimant. (Docket No. 15 at ECF p. 16). Specifically, he argues the ALJ's RFC is not supported by substantial evidence because there is no indication as to how high production quotas and fast-paced assembly line work are particular stressors to him, "nor why any of his other individualized stressors were not address in this RFC," though Plaintiff does not name what those missing limitations are. (Docket No. 15 at ECF p. 17).

At Step 3, the ALJ found that Plaintiff had no more than moderate impairments in concentration, persistence, or pace and noted that the consultative examiner found Plaintiff appeared to have difficulty concentrating, but successfully completed serial 7s, repeated 6 digits forward, and 3 digits backwards. (Docket No. 12-2 at ECF p. 18). In his RFC, the ALJ included, in relevant part that the claimant must be limited to:

---

[3] Plaintiff cites *Stevenson v. Chater*, which provides that a failed work attempt can be considered evidence that a claimant engaged in substantial gainful activity only if a reason other than the claimant's disability ended that work. 105 F.3d 1151, 1155 (7th Cir. 1997). However, the court in *Stevenson* was reviewing step one to determine if the ALJ erred in assessing whether Plaintiff had engaged in substantial gainful activity—thus, denying benefits—and did not even address the subsequent steps.

> simple, routine, repetitive tasks, and understand, remember, and complete simple work instructions; is limited to occasional superficial contact with the general public, but no physical contact with the general public, and he is limited to occasional working in teams and in tandem with others; can tolerate little change in work structure; and is limited to low stress type jobs, meaning no high production quotas and/or fast-paced assembly link work.

([Docket No. 12-2 at ECF p. 19](#)).[4]

These limits adequately accommodate Plaintiff's moderate degree of limitation in concentration, persistence, or pace, given that the state agency psychologists assessed that a somewhat less restricted capacity for semi-skilled work with limited social interactions and could attend to tasks for sufficient periods to complete them and could manage the stresses involved with work. (Tr. 81, 92-93). The state agency psychologist found that semi-skilled work with social limits adequately accommodated the moderate restrictions in concentration, persistence, and pace. (Tr. 81, 92-93). Moreover, Drs. Lovko and Pressner explained, while Plaintiff's symptoms caused some problems with others as he preferred to be by himself, and could pay attention unless in an episode, his concentration was moderately limited but appeared reasonable for tasks, and he was able to tolerate superficial, casual interactions with others. (Tr. 81, 92-93). *See [O'Connor-Spinner v. Astrue](#)*, 627 F.3d 614, 619 (7th Cir. 2010) ("We also have let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform.")

Notably, while Plaintiff asserts the ALJ erred in his analysis—he points to no limitations that need be included to account for his limitations as to concentration, persistence, or pace—or

---

[4] The hypotheticals to the VE that resulted in the three jobs discussed at Step 5 provided similar limitations. ([Docket No. 12-2 at ECF pp. 63-64](#)).

9

otherwise. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987) (claimant is in better position to provide information regarding his own medical conditions); *Shineski v. Sanders*, 129 S. Ct. 1696, 1706 (2009) (burden of showing harmful error is on party attacking the agency's decision).

### B. The ALJ's credibility discussion was patently wrong due to err in the analyses of the ALJ's previous work and treatment compliance.

Plaintiff, next argues that the ALJ erred in multiple ways when assessing Plaintiff's credibility. (Docket No. 15 at ECF p. 19). He argues that SSR 96-7p requires the ALJ to address each of the seven factors outlined within the ruling—which he asserts the ALJ did not do. (Docket No. 15 at ECF pp. 19-21). He further asserts that the ALJ erred by using his work history to call into question the severity of his allegations. (Docket No. 15 at ECF pp. 21-22). Plaintiff argues that the ALJ made flawed and illogical conclusions regarding his treatment compliance. (Docket No. 15 at ECF pp. 22-23). Finally, Plaintiff argues that the ALJ's analysis of his activities and function level were inaccurate and inappropriately equated with his ability to maintain a full-time job, violating *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).

The Commissioner responds that the ALJ considered that despite his symptom complaints, the medical evidence shows that the medications that he took managed his symptoms successfully and that his mental status examinations showed normal findings during treatment visits. (Docket No. 20 at ECF p. 13). Commissioner points to the ALJ's note that Dr. Niculescu observed Plaintiff's demeanor at an examination, during which he had non-elaborative speech and a constricted affect, staring wide-eyed in response to most questions, until Plaintiff answered his telephone during the interview and carried on a conversation with normal tone and pace. (Tr. 22, referring to Exhibit 2F at Tr. 328). As to Plaintiff's work history, the Commissioner argues that the ALJ acknowledged that work activity was not in and of itself disability preclusive and

that he considered the evidence of his work activity to assess the severity of his allegations. (Tr. 22).

Social Security Ruling 96-7p[5] requires an ALJ to consider a claimant's subjective complaints in light of the relevant objective medical evidence, as well as any other pertinent evidence. That evidence includes the claimant's daily activities, the severity and intensity of the claimant's symptoms, precipitating and aggravating factors, medication, treatment, other measures to relieve the person's symptoms and their efficacy and side effects, and any other factors relevant to functional limitations from or due to other symptoms. *See also* 20 C.F.R. § 404.1529(c)(3). The court's role is "limited to examining whether the ALJ's determination was 'reasoned and supported,' and it may not overturn the ALJ's finding unless it is "patently wrong." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). "It is only when the ALJ's determination lacks any explanation or support that [the court] will declare it to be patently wrong and deserving of reversal." *Id.* (internal citations omitted).

It is *not* necessary that the ALJ recite findings on *every* factor described in SSR 96-7p, or that he discuss every piece of evidence that might bear on credibility, or that he even specify exactly which of the claimant's statements were not credible. *Sawyer v. Colvin*, 512 Fed. Appx. 603 at *5 (7th Cir. 2013) (unpublished) (the principle that ALJs are not required to discuss every piece of evidence applies to the credibility assessment); *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) (ALJ need not specific which statements were incredible so long as the overall record

---

[5] SSA recently replaced SSR 96-7p with a new ruling, SSR 16-3p, Evaluation of Symptoms in Disability Claims, 81 FR 14166 (March 16, 2016). The substantive aspects of SSR 16-3 do not apply retroactively, so SSR 96-7p still governs this case. SSR 16-3 clarifies SSA's existing policy by explicitly stating that an ALJ need not discuss all of the regulatory factors that he considers, except as he finds them pertinent to the case. *Id.* at 14170.

11

adequately supports the credibility finding); *Erwin v. Astrue*, 2009 WL 2762840 at *7 (S.D. Ind. Aug. 27, 2009) (ALJ need not recite findings on every factor).

Thus, the Plaintiff's general argument that the ALJ's credibility determination was flawed is unpersuasive, particularly given that the ALJ did much more than include "meaningless boilerplate," including noting the contradictions between Plaintiff's statements to physicians and their own observations and contradictions between Plaintiff's own statements. This is sufficient insight into the bases for his credibility determination.

Plaintiff asserts that the ALJ erred in analyzing his work history because he used his work activity in 2011 and 2012 to find him incredible, despite that these were unsuccessful work attempts, and because he used Plaintiff's attempts to find work online to discredit him, despite that this is evidence of his willingness to work. In his credibility assessment, the ALJ provided that:

> [T]he record contains inconsistencies regarding the claimant's work activity. While work activity in and of itself is not disability preclusive, it does call into question the severity of the claimant's allegations. For example, the claimant reported work activity in 2011 and subsequently in July 2012. Further during the Consultative Examination on March 20, 2013, the claimant reported that he was currently looking for work online. As stated above, work activity is not disability preclusive and is only one factor considered, but overall, the inconsistencies suggest that his allegations are not credible.

(Docket No. 12-2) (internal citations omitted). Despite the ALJ's reassurance that this is only one factor considered in finding the Plaintiff incredible, the conclusions he drew from the evidence were improper. The medical records the ALJ cited in support of Plaintiff's 2011 and 2012 work did indicate that Plaintiff was working (notably, they did not specify the duration those jobs were held). (Docket No. 12-7 at ECF pp. 97, 102). While the ALJ did not ask the Plaintiff about these work efforts at the hearing, he did ask questions about his 2013 and 2014

work efforts, in which Plaintiff was only able to hold jobs from one day to about six weeks because, as he reported, he was filled with anxiety and couldn't focus. (Docket No. 12-2 at ECF p. 44). A claimant's desire to work is not inconsistent with his inability to work because of a disability. *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) (claimant's desire to work, but inability to find work, is "consistent with his wanting to lead a normal life yet being unable to land a job because he's disabled from gainful employment"); *Jones v. Shalala*, 21 F.3d 191, 192 (7th Cir. 1994) (explaining that claimant might be earning a decent wage despite being permanently disabled).

The Commissioner counters that the ALJ reasonably considered the inconsistencies regarding the Plaintiff's work history during a period of alleged unemployability—citing Dr. Grant's records where Plaintiff reported he had been unemployed since 2012 and had most recently worked for a laborer for a furniture repair business. (Docket No. 20 at ECF p. 14). But, while the ALJ did cite these records generally, he never discussed this evidence nor did he draw such a specific conclusion that Plaintiff's records of work attempts were inconsistent with and much greater than Plaintiff's testimony of work attempts during the alleged period of disability; thus, his testimony was less credible. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (holding the *Chenery* doctrine strictly limits the court review to the reasons articulated in the ALJ's written decision). His conclusion was merely due to previous work records, Plaintiff's testimony was less credible—which was improper.

Plaintiff argues the ALJ erred by noting he had worked since his diagnosis of bipolar disorder in 1990 "without an issue," given that *most* of this work was for his brother. (Docket No. 12-2 at ECF p. 23). "A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is

13

in fact working." *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005). However, Plaintiff's argument and the record shows that Plaintiff had other supervisors during this time; thus, the ALJ's conclusion in this regard was not patently wrong.

Next, Plaintiff asserts that the ALJ made improper conclusions regarding his treatment compliance. (Docket No. 15 at ECF p. 22). Specifically, the ALJ stated that during his inpatient psychiatric hospitalization, the doctor observed his Lithium concentration was at a sub-therapeutic level—and once it was increased he was sleeping well and felt better. (Docket No. 12-2 at ECF p. 24). The ALJ concluded: "Therefore, though the claimant reported compliance with treatment, he was non-compliant and as such, I find the claimant's allegations of severe impairments and resulting limitations to be not credible." *Id.* The Commissioner does not respond to this argument.

The ALJ's interpretation of this medical report and inference of non-compliance are erroneous. The ALJ appears to have drawn the conclusion that since Plaintiff's Lithium concentration was at a sub-therapeutic level, he must not have been complying with his medication regiment despite reporting otherwise. However, it was never proposed that his sub-therapeutic level was because he was failing to take his medication as prescribed. (Docket No. 12-9 at ECF p. 39). It was noted that Plaintiff reported and confirmed on multiple occasions that he was compliant with his medication. *Id.* The doctor then increased his dosage level of Lithium during his hospitalization, and his concentration levels did increase, but continued to be sub-therapeutic. *Id.* The doctor then increased his dosage again in order to bring it to the therapeutic level. *Id.* This report does not support an inference of noncompliance based on the sub-therapeutic Lithium concentration; thus, the ALJ erred in drawing this conclusion.

On the other hand, the Plaintiff's reliance on *Kangail v. Barnhart* is not persuasive. [454 F.3d 627 (7th Cir. 2006)](). *Kangail* holds an ALJ errs when finding a claimant's inability to hold a job unimportant because she could work when taking her medicine because such a holding ignores an individual's difficulty maintaining a treatment regimen during both bipolar disorder's manic and depressive phases. *Id.* at 630-31. Yet, *Kangail* does not reference an ALJ's credibility determination. An ALJ's conclusion that substance abuse is contrary evidence to Plaintiff's *self-reports* of medical compliance is reasonable and distinguishable from *Kangail*'s holding. *Id.*

Plaintiff also asserts that the ALJ erred in his assessment of Plaintiff's activities of daily living, arguing he actually reported that while he is physically capable of driving his wife and children, cleaning the house, taking care of personal hygiene, preparing simple meals, *et cetera*; he only does so with difficulty, assistance, and reminders. ([Docket No. 15 at ECF p. 25]()). He also alleges that the ALJ inappropriately equated his daily living activities with those of a full-time job. ([Docket No. 15 at ECF p. 26]()). Yet, the ALJ did consider the evidence that Plaintiff argues was overlooked and on review this Court is required to consider the record as a whole. For instance, the ALJ considered Plaintiff's wife's testimony that he needs reminders to take care of tasks and is unable to handle finances. ([Docket No. 12-2 at ECF p. 20]()). There is no evidence that the ALJ equated these activities of daily living with the Plaintiff's ability to maintain full-time employment; instead, the ALJ appears to address Plaintiff's activities of daily living in accordance with SSR 96-7p. *[Bjornson v. Astrue](), 671 F.3d 640, 647 (7th Cir. 2012)*.

Under these circumstances the court does find that the ALJ's finding was patently wrong and must be remanded for further consideration as to the specific errors discussed above.

## Conclusion

For all these reasons, the Magistrate Judge recommends that the court grant Plaintiff's brief in support of appeal ([Docket No. 15](#)) and that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 9th day of August, 2017.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.